UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MARK COLIN JENNINGS, II,

                    Plaintiff,                    Case No. 1:16-cv-921

v.                                       Honorable Robert J. Jonker

ROBERT CROMPTON et al.,

                    Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Murphy and Unknown Part(y)(ies) ##1-4. The Court also will dismiss Plaintiff's Eighth and Fourteenth Amendment claims arising from his placement in administrative segregation. The Court will serve Plaintiff's remaining Eighth Amendment and retaliation claims against Defendants Crompton, Hall and Stone.

**Factual Allegations**

Plaintiff is incarcerated in the Oaks Correctional Facility (ECF).  In his *pro se* complaint, Plaintiff sues the following ECF employees:  Doctor Robert Crompton; Law Librarian (unknown) Murphy; Corrections Officers (unknown) Stone and (unknown) Hall; and Unknown Part(y)(ies) #1, named as "John/Jane" at the Oaks Correctional Facility.  Plaintiff also sues Unknown Part(y)(ies) #2, named as "any and all MDOC state and affiliates,"  Unknown Part(y)(ies) #3, named as "any and all Michigan prisoners and affiliates" and Unknown Part(y)(ies) #4, named as "All MDOC state and affiliates."  (Compl., ECF No. 1, Page ID#8.)

Plaintiff was transferred to ECF on February 24, 2016.  He alleges that on March 18 and April 7, 2016, Defendant Dr. Crompton denied him treatment for pain in his "cervical, thorasic, lumbar spine, right hip and right shoulder from ongoing injuries."  (Compl., ECF No. 1, PageID.9.) He further claims that Dr. Crompton refused to treat the pain from his cervical fusion on July 8, 9 and 11, 2016.

Plaintiff, who was sexually assaulted at another prison before his transfer to ECF, claims that he requested the Rape Elimination Act national standards from Defendant Murphy. Murphy, however, only provided him with five pages every three days at "1/2 font size," (Compl., ECF No. 1, PageID.9), despite the fact that Plaintiff is partially blind and has depth perception issues.  Plaintiff filed three civil rights actions in this Court in April and May of 2016 and has other legal actions pending in the state courts.  Plaintiff alleges that on May 11, 2016, Defendant Murphy denied him supplies necessary to litigate his pending legal actions.  On June 6, 2016, Plaintiff asked Defendant Murphy for paper, photocopies, envelopes and use of a typewriter to be paid for by the Prisoner Benefit Fund.  Murphy refused and advised Plaintiff to write everything by hand on scrap

paper.  Murphy also refused Plaintiff's request for copies of summons and complaints and envelopes to serve two of his lawsuits.

Plaintiff claims that on June 29, 2016, he complained to Defendant Hall that Murphy was denying his right of access to the courts.  In response, Hall allegedly threatened to write a false misconduct ticket against Plaintiff and "to throw [him] in the hole (segregation) so [he] can't use the law library." (*Id*.)  The same day, Plaintiff "wrote a grievance about CO Hall's threats and asked for assistance from John/Jane Doe, Oaks Correctional Facility Staff.  No one provided any assistance." (*Id*.)

On July 8, 2016, Defendants Hall and Stone walked over to the table where Plaintiff was eating and told him to leave.  Plaintiff asked for a couple more seconds to finish his food. Defendants Hall and Stone allegedly slammed Plaintiff to the table and put handcuffs on him. Plaintiff contends that they pulled his arms up so hard that they tore the acromioclavicular joint in his right arm, causing pain and disfigurement.  Defendants Hall and Stone wrote a false misconduct ticket against Plaintiff for assault and battery and disobeying a direct order, which resulted in Plaintiff's placement in administrative segregation.

Plaintiff seeks injunctive relief and monetary damages.

## Discussion

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

I.  Unknown Part(y)(ies) ##2-4

Plaintiff sues Unknown Part(y)(ies) #2, named as "any and all MDOC state and affiliates," Unknown Part(y)(ies) #3, named as "any and all Michigan prisoners and affiliates" and Unknown Part(y)(ies) #4, named as "All MDOC state and affiliates." To the extent Plaintiff sues the State of Michigan or the MDOC, they are entitled to sovereign immunity. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d

823, 826  (6th Cir. 1993).  Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court.  *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment.  *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000).  In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages.  *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)).  Therefore, the Court will dismiss Unknown Part(y)(ies) ##2 and 4.

To the extent Plaintiff sues "any and all Michigan prisoners and affiliates," he fails to state claims.  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814.  There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself."  *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).  Plaintiff has not presented any allegations by which the conduct of other

prisoners could be fairly attributed to the State.  Accordingly, he fails to state a § 1983 claim against Unknown Part(y)(ies) #3.

A.     **Defendant Murphy**

Plaintiff alleges that Defendant Murphy violated his right of access to the courts by denying him supplies necessary to litigate multiple pending lawsuits, including paper, photocopies, envelopes and the use of a typewriter.  It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners.  *Id.* at 817.  The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them."  *Id.* at 824-25.  The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts.  *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit.  In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.  In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

Plaintiff does not allege any injury resulting from Defendant's Murphy's alleged denials of legal materials. Moreover, in addition to filing this case, Plaintiff successfully filed two other cases in 2016. One of those case was dismissed by the Court for failure to state a claim, *see Jennings v. McQueeney et al.*, 1:16-cv-1218 (W.D. Mich.), and the other case remains pending, *see Jennings v. Washington et al.*, 1:16-cv-483 (W.D. Mich.). Accordingly, Plaintiff fails to state a claim against Defendant Murphy.

**B.     Unknown Part(y)(ies) #1**

Plaintiff's only allegation in the complaint concerning Unknown Part(y)(ies) #1, "John/Jane" at the Oaks Correctional Facility, is that Plaintiff "wrote a grievance about CO Hall's threats and asked for assistance from John/Jane Doe, Oaks Correctional Facility Staff. No one provided any assistance." (Compl., ECF No. 1, PageID.9.) Where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.

1999).  The reason is that there must be active unconstitutional behavior.  Failing to intervene on a prisoner's behalf to remedy reported acts of unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance.  *Id.*  Consequently, Plaintiff's allegation that Unknown Part(y)(ies) #1 failed to take action in response to his grievance fails to state a claim.

### C.  **Defendant Crompton**

Plaintiff alleges that Defendant Dr. Crompton denied him treatment for pain in his "cervical, thorasic, lumbar spine, right hip and right shoulder from ongoing injuries" on March 18 and April 7, 2016.  (Compl., ECF No. 1, PageID.9.)  He further claims that Dr. Crompton refused to treat the pain from his cervical fusion on July 8, 9 and 11, 2016.  At this stage of the proceedings, Plaintiff's allegations are sufficient to warrant service of Plaintiff's Eighth Amendment medical claim against Defendant Crompton.

### D.  **Defendants Hall and Stone**

Plaintiff claims that on June 29, 2016, he complained to Defendant Hall that Murphy was denying his right of access to the courts.  In response, Hall allegedly threatened to write a false misconduct ticket against Plaintiff and to throw him in the hole.  Nine days later, on July 8, 2016, Defendants Hall and Stone walked over to the table where Plaintiff was eating and told him to leave.  When Plaintiff asked for a couple more seconds to finish his food, Defendants Hall and Stone allegedly slammed Plaintiff to the table and put handcuffs on him.  Plaintiff contends that they pulled his arms up so hard that they tore the acromioclavicular joint in his right arm.  Defendants Hall and Stone wrote a false misconduct ticket against Plaintiff for assault and battery and disobeying a direct order, which resulted in Plaintiff's placement in administrative segregation.

-8-

To the extent Plaintiff asserts a due process claim arising from his placement in administrative segregation, he fails to state a claim. The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976). In *Sandin v. Conner,* 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 486-87; *see also Jones v. Baker,* 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995).

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 467-73 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden–Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth Circuit has held that mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey,* 62 F.3d at 790-91; *see Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir.

-9-

2010) (61 days in segregation is not atypical and significant).  The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest.  *See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). *But cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest).  Thus, even assuming that Plaintiff has been in administrative segregation since July 8, 2016, the nature and duration of his confinement  do not implicate a liberty interest.

Likewise, Plaintiff fails to state an Eighth Amendment claim arising from his segregated confinement.  The Eighth Amendment prohibits any punishment which violates the civilized standards of humanity and decency, or involves the unnecessary and wanton infliction of pain. *See Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). To prove an Eighth Amendment violation, an inmate must show that he has been deprived of the minimum civilized measures of life's necessities. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment claim. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

-10-

At this stage of the proceedings, Plaintiff's allegations are sufficient to warrant service of Plaintiff's Eighth Amendment claim for excessive use of force against Defendant Hall and Stone.  The Court also will serve Plaintiff's retaliation claim against Defendants Hall and Stone.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Murphy and Unknown Part(y)(ies) ##1-4 will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court also will dismiss Plaintiff's Eighth and Fourteenth Amendment claims arising from his placement in administrative segregation.  The Court will serve Plaintiff's remaining Eighth Amendment and retaliation claims against Defendants Crompton, Hall and Stone.

An Order consistent with this Opinion will be entered.


Date:   November 18, 2016                    /s/ Robert J. Jonker
                                             ROBERT J. JONKER
                                             CHIEF UNITED STATES DISTRICT JUDGE